**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:09-cv-1883-PAB-KLM

SEA-ALIS, LLC, and
SCOTT HAND,

      Plaintiffs,

v.

PORTER, INC., an Indiana Corporation,
R&R YACHT SALES, INC., d/b/a SUNDANCE MARINE,
a California Corporation, GRANDER, INC., d/b/a
CROW'S NEST YACHTS, a California Corporation,
VOLVO PENTA OF THE AMERICAS, a Delaware
Corporation, and RAYMARINE, INC., a Delaware Corporation,

      Defendants.

---

**VOLVO PENTA OF THE AMERICAS, INC'S MOTION
AND SUPPORTING MEMORANDUM OF LAW TO EXCLUDE
PLAINTIFFS' EXPERT TESTIMONY**

    NOW COMES Volvo Penta of the Americas, Inc. ("Volvo Penta"), by counsel, and moves to exclude the testimony of Plaintiffs' experts on the grounds that the proposed testimony is inadmissible pursuant to Fed. R. Evid. 702, 402 and 403. In support of this Motion, Volvo Penta states as follows:

### I.    INTRODUCTION

    This is a breach of warranty action relating to a 2007 Formula boat owned by Plaintiff Sea-Alis, LLC. Volvo Penta manufactured the boat's engines and drive system (the "Volvo Penta Components"), and warranted (1) that the Volvo Penta Components would be free from defects in material and workmanship during the applicable warranty coverage period; and (2)

that Volvo Penta would "repair or replace" any defective components covered by the warranty presented for repairs within the warranty period. See, Ex. A1.

The gist of Plaintiffs' claim is that the boat suffered from various defects (both relating to the Volvo Penta Components, as well as other alleged defects in the boat itself) within the warranty period, and that the Defendants failed to provide proper warranty repairs. To prove this claim, Plaintiffs must establish that there was a defect with respect to the Volvo Penta drive system that Volvo Penta has failed to repair. *See Cooley v. Big Horn Harvestore Sys, Inc.*, 813 P.2d 736, 744 n. 7 (Colo. 1991); *see also, Official Comment 13, C.R.S.A. §4-2-314* ("In an action based on breach of warranty, it is of course necessary to show not only the existence of the warranty but the fact that the warranty was broken and that the breach of the warranty was the proximate cause of the loss sustained").

Several facts leading up to this dispute are not disputed, including:

1. The boat was successfully sea trialed (a "test drive") on June 4, 2007, in connection with its sale to Sea-Alis, LLC. Hand dep., Ex. A2, pp. 54-59, 81.

2. Sea-Alis, LLC took possession of the boat (which was shipped from Ensenada, Mexico to Vancouver, British Columbia) on June 15, 2007. Hand dep., Ex. A2, p. 63.

2. The boat was successfully used on certain trips following its delivery. See, e.g., Hand's September 11, 2007 letter to Formula, Ex. A3, which states:

    i. "Our delivery in San Diego was good . . . .";

    ii. "After leaving San Diego I kept in touch with Paul [the Sundance salesman] as he delivered the yacht to Ensenada with a hired captain. Paul informed me that everything went well . . . ."

    iii. "The yacht ran fine on our 1½ hour cruise back to Vancouver."

2

      iv.    "Five days later . . . we took four friends on a trip to Victoria BC and cruised the islands for four hours before docking in Victoria.

      v.    "The next day we headed back to Vancouver . . . ."

    3.    The Volvo Penta Components incorporate a unique "Inboard Propulsion System" ("IPS"). Unlike traditional marine engines (which incorporate a drive shaft, propeller and rudder to control the boat), the IPS system combines the propulsion and steering functions into an integrated drive system which control the drive units to both propel and steer the boat. See, Ex. A4. The system incorporates various electronic controls, which control the operation of the IPS system and monitor the system for normal or any abnormal operating conditions (which can result from many causes, including defective components, accident damage, loose connections, improper engine alignment, improper maintenance). Among other features, when abnormal operating conditions are detected, the system reports various diagnostic "fault codes" to assist the in identifying and repairing any abnormality. See, Ex. A5.

    4.    On or about July 10, 2007, Plaintiff experienced engine "fault codes" relating to the Volvo Penta Components. See Jose Torres (local Volvo Penta service representative), dep. Ex. A6, pp. 5-9, 37-38, and 97-98. In the course of diagnosing these fault codes:

    A.    It was determined that the boat had been in an accident (striking something) resulting in damage to the port side drive unit. Torres dep., Ex. A6, pp. 37-39; and

    B.    The engine sea water strainer (filter) lids on the boat were found to be leaking, causing damage to one of the alternators on the port engine. Torres dep., Ex. A6, pp. 85-86. Those components were successfully repaired under the Volvo Penta express warranty. Hand dep., Ex. A2, p. 83; Torres dep., Ex. A6, pp. 86, 231, 236.

5. Although Hand is dissatisfied that Volvo Penta could not point to a specific item as the "root cause" requiring repairs, there have been no codes or recurrences of the warranty problems following those repairs. Hand dep., Ex. A2, p. 125 see also, Driussi (local marine captain and repair technician) dep., Ex. A7, pp. 90-91, 209-210. The repair history and subsequent testing of the boat confirm that it is repaired and ready for use. See, e.g., Taylor (Volvo Penta expert) dep., Ex. A8, pp. 40, 42-44, 199-202.

The gist of Plaintiffs' grievance is that he is not satisfied with the repair process because he was never informed that the "root cause" of the fault codes had been specifically identified, and he is thus not satisfied that the repair process was successfully completed. As argued by Plaintiffs' primary expert, Anthony Rossitto:

> Mr. Hand has made his vessel available over the last several years in and [sic] attempt to allow for Formula, Volvo, and Raymarine to correct deficiencies as noted in the subject report. To this date no definitive action has been taken nor have [sic] the root cause of the mechanical and electrical problems been ascertained.

Ex. A9 (conclusion section). Mr. Rossitto thus concludes that the boat is inoperable and poses a danger to passengers and crew as a consequence of the allegedly inadequate repair effort. Id.

Plaintiffs have offered the testimony of would-be experts Edward McCrae, Mark Mehta and Mr. Rossitto to meet their burden of proving (1) that some defect exists in the Volvo Penta Components (as opposed to accident damage or other potential causes having resulted in the engine fault codes); (2) that the alleged defect has not been adequately repaired; and (3) that the boat cannot be safely operated as a result. None of Plaintiffs experts have offered competent and admissible evidence on these issues.

## II. ANALYSIS

No one disputes that the operation of the Volvo Penta drive system is highly technical. Plaintiffs must thus offer an expert opinion to establish the existence of a defect that remains unrepaired. *See Truck Ins. Exch. v. Magnetek, Inc.*, 360 F.3d 1206, 1214 (10th Cir. 2004). Although Plaintiffs have "rejected" the repair process[1], they have come forward with no evidence that the boat remains unrepaired or that Volvo Penta has breached its warranty obligations. Although Plaintiffs' experts argue that there *may* be an unresolved electrical issue with the drive system, not one of Plaintiffs' experts conducted a single test to attempt to validate their theory. *See Black v. M&W Gear Co.*, 269 F.3d 1220, 1237 (10th Cir. 2001)(excluding expert's testimony where expert "had not conducted any tests or calculations to support his opinion").

### A. The Requirements for Expert Testimony

The admissibility of expert testimony at trial is governed by Rule 702 of the Federal Rules of Evidence, which states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. This Rule "imposes upon the trial judge an important 'gate-keeping' function with regard to the admissibility of expert opinions." *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509

---

[1] Notably, Rossitto acknowledges that the mere fact that a Volvo Penta engine/IPS system experiences a problem does not inevitably lead to the conclusion that it was caused by a Volvo Penta component failure, Rossitto dep., Ex. A13, pp. 22-24.

U.S. 579, 113 S. Ct. 2786 (1993)). In applying this rule, the trial judge "must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. at 589, 591-592.

There are several elements for an expert's testimony to be admissible under Rule 702. *See Ralston,* 275 F.3d at 969. Included is the proponent show the expert is qualified to testify competently regarding the matters he intends to address. Id. While an expert may be generally knowledgeable in a particular field, that is not enough to be qualified under Rule 702. Instead, the expert must have the qualifications to answer the "*specific* . . . matters he proposes to address as an expert." *Graves v. Mazda Motor Corp.*, 675 F. Supp. 2d 1082, 1093 (W.D. Okla. 2009) (emphasis added); *see also*, *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 157, 119 S. Ct. 1167 (1999) ("The trial court ha[s] to decide whether this particular expert ha[s] sufficient specialized knowledge to assist the jurors 'in deciding the particular issues in the case.'"); *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994) ("[T]he issue . . . is not the qualification of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question.").

The proponent of the expert testimony must also establish that the methodology by which the expert reached his conclusions is reliable. *See Weisgram*, 528 U.S. at 455 ("Since *Daubert* . . . , parties relying on expert evidence have had notice of the *exacting standards of reliability* such evidence must meet.") (emphasis added). To be reliable, an expert's testimony "must be based on scientific knowledge, which 'implies a grounding in the methods and procedures of science' based on actual knowledge, not 'subjective belief or unsupported speculation.'" *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003) (quoting *Daubert*, 509 U.S. at 590). "In other

words, 'an inference or assertion must be derived from the scientific method . . . [and] *must be supported by appropriate validation* – i.e., 'good grounds,' based on what is known." *Id*. (alterations in original, emphasis added, quoting *Daubert* 509 U.S. at 509); *see also*, *Black*, 269 F.3d at 1237 ("[A] trial judge must focus on the reasoning and methodology of the expert in arriving at the conclusion"). In determining whether an expert's testimony is reliable, the court should consider "whether the opinion at issue is susceptible to testing and has been subjected to such testing." *Goebel v. Denver & Rio Grande W. R. Co.*, 346 F.3d 987, 991-92 (10th Cir. 2003) (citing *Daubert*, 509 U.S. at 593-94).

    B.    <u>Anthony Rossitto</u>

After issuing a series of initial and supplemental reports, Ex. A9 – A12[2], arguing that the "root cause" of the boat's engine fault codes remains undetermined, Rossitto (Plaintiffs' primary expert) ultimately argued that the "root cause of all Mr. Hand's problems are as yet to be ascertained" by Volvo Penta and the vessel thus cannot be deemed repaired.[3] See, Ex. A11 (Summation section). Summarizing his opinion, Mr. Rossitto testified:

    Q.    So the gist of your opinion is that we have an electrical problem of some sort, correct?

---

[2] In his first report, Ex. A9, Rossitto concludes that "to this date no definitive action has been taken nor have [sic] the root cause of the mechanical and electrical problems been ascertained." In his second report, Ex. A10, Rossitto concludes that "Whenever a problem or series of problems arise that renders that yacht unmaneuverable and the cause is not positively determined and rectified than [sic] the yachts performance continues to remain suspect and therefore unsafe to operate." In his third report, Ex. A11, Rossitto concludes that the boat was built with faulty sea strainers "which resulted in flooding/spraying the engine room with salt water, this intern [sic] caused damage to several components including the main wiring harness."

[3] Although Rossitto also opined that the boat's IPS drive units were misaligned, he acknowledged in his deposition that he did not actually know if there was any misalignment when the engine fault code issues were experienced. Rossitto dep., Ex. A13, p. 66.

7

    A.      Correct.

    Q.      That has not been specifically diagnosed, correct?

    A.      Correct.

Rossitto dep, Ex. A13, p. 33; see also, pp. 17, 21. Yet, on the very questions he raises, Rossitto is neither qualified to render opinion testimony nor does he offer any relevant testimony.

To be qualified, Rossitto must have knowledge *specific* to the matter he proposes to address. *See Ralston*, 275 F.3d at 970 (excluding orthopedic surgeon from testifying as expert because she did not have specialized knowledge concerning specific medical-related issue in case); *Hauck v. Michelin N. Am., Inc.*, 343 F. Supp. 2d 976, 983 (holding that expert was not qualified to offer opinion as to tire defect where had no experience in the process of manufacturing tires). While Rossitto may be generally knowledgeable about boats from his experience, that is insufficient to qualify him as an expert in this case on the issues of engine design and fault code diagnosis and repair.

Rossitto is an independent consultant working in the yacht industry for the past 15 years, and he has surveyed yachts for purchase and for insurance purposes. Rossitto dep., Ex. A13, pp. 5-6. Rossitto has no experience diagnosing problems with a Volvo Penta drive system. Rossitto has never installed, worked on, or even maintained a Volvo Penta drive system or one like it, nor does he have any training specific to the Volvo Penta Components. Rossitto dep., Ex. A13, pp. 78-79, 87, 93-94.

Nor does Rossitto's opinion – that there is an unresolved electrical problem with the Volvo Penta Components – meet the "exacting standard of reliability" required by Fed. R. Evid. 702. *See Wesgram*, 528 U.S. at 455. Rossitto theorizes that water entered into the engine

compartment when a sea strainer failed, and that some of this water *may* have been drawn into electrical wires, "which can . . . result in poor electrical conductivity which *may* . . . result in . . . electrical fluctuating currents or voltages." Rossitto dep., Ex. A13, p. 46. When asked whether he had done anything to test his theory, he admitted that he had not:

> Q. Have you done any testing or analysis of the Hand boat to determine if this has actually occurred?
>
> A. No, sir, I have not.
>
> Q. It is testable, isn't it?
>
> A. Yes, sir. I believe it is.

*Id*. When asked if he has tested any part of his theory (that water sprayed from a leaking sea strainer to his claim that the water caused poor electrical conductivity), it is evident that Rossitto has done nothing to test or validate his theory:

> Q. Do you know whether saltwater discharged from the sea strainers came into contact with any of the electrical components involved in the boat's control systems?
>
> A. No.
>
> Q. Did you do any testing or analysis to determine what spray would result from a leaking sea strainer cover in this boat?
>
> A. No.
>
> Q. [H]ave you done anything to determine whether there were actually fluctuations in voltage within the Volvo Penta components and systems?
>
> A. No, sir.
>
> Q. [D]id you do any testing or scientific verification to determine whether the fuse may have been affected by a leak in the sea strainer?
>
> A. No.

> Q. And you didn't do any testing of the conductors and connections in the Volvo Penta control systems on this boat, correct?
>
> A. Correct.
>
> Q. Did you do anything to scientifically verify whether those components are acting properly or improperly?
>
> A. No, I did not.

*Id*. at 42, 50, 52-53, 62; see also, Rossitto dep., Ex. A12, pp. 44-46, 49-57.

> Q. And you haven't done any electrical testing on any of the Volvo Penta control system components, correct?
>
> A. Correct.
>
> Q. Done any analysis or testing on any of the conductors, the wiring in the Volvo Penta Control systems?
>
> A. No.
>
> Q. Do you know, as we sit here today, whether any of them are faulty?
>
> A. I don't know whether any of them have been tested, so I can't, without a doubt, say they are or they aren't; but I would assume they are because they are the common thread that connects all of the components.
>
> Q. But you certainly haven't tested it, have no?
>
> A. No, sir, I have not.
>
> Q. Haven't done anything to scientifically validate or verify your theory, correct?
>
> A. No.

Rossitto dep., Ex. A13, pp. 55-56. Likewise, Rossitto admitted that he has no knowledge of any current defect with respect to the boat:

> Q. [D]o you actually know whether there are any existing unrepaired defects in the Volvo Penta components on this boat?
>
> A. I personally do not.

10

*Id*. at 36, 110-111; see also, Rossitto dep., Ex. A13, pp. 43-44, 63-64, 105-107.

Rossitto's "opinions" are unquestionably *not* grounded "in the methods and procedures of science based on actual knowledge," *Dodge*, 328 F.3d at 1222 (citation omitted), and are nothing more than "subjective belief . . . [and] unsupported speculation." *Id*. Rossitto's opinions are neither derived from the scientific method nor "supported by appropriate validation." *Id*; *see, e.g., Black*, 269 F.3d at 1237-38 (affirming exclusion of opinion where expert "had not conducted any tests or calculations to support his opinion"); *Weisgram v. Marley Co*., 169 F.3d 514, 519-21 (8th Cir. 1999) (excluding expert's opinion as "rank speculation" where expert had conducted no tests to determine whether his theory was even possible); *Mitchell v. Gencorp, Inc*., 165 F.3d 778, 781 (10th Cir. 1999) ("Absent supporting scientific data, . . . [the expert's] conclusions are little more than guesswork."); *Hauck*, 343 F. Supp. 2d at 985 (rejecting an opinion "as unreliable because [the expert] never attempted to identify the manufacturing defect that he postulates to have existed").

Rossitto is neither qualified, nor has he offered any opinions that satisfy the "exacting standards of reliability" required by Fed. R. Evid. 702. *Wesgram*, 528 U.S. at 455. His testimony should thus be excluded.

  **B.**  **Edward McCrea**

Sea-Alis also identified Edward James McCrea, Jr., as an expert witness. McCrea believes that a leak in a sea strainer caused damage to the components in the engine compartment, and that "the result of the damage is to reduce the reliability of those components which would eventually cause the vessel to experience unexpected breakdowns[.]" Ex. A14. McCrea also asserts that there was a noise from the engine that he believes is not consistent with

the proper operation of an engine. Id. Like Rossitto, McCrea is not qualified to make these opinions, and his opinions do not meet the standards of admissibility under Fed. R. Evid. 702.

McCrea has worked in the boat industry for many years, and he currently operates a survey company where he inspects damaged boats primarily for insurance companies. McCrea dep., Ex. A15, pp. 4, 7-29. McCrea has admitted his lack of expertise in this case:

> Q: Do you consider yourself to be an expert with regard to the operation of the Volvo IPS engine?
>
> A: No.

Id. at 129, 139-140.

Nor did McCrea do anything to test or analyze his opinions. For instance:

> Q: Did you do any specific testing or analysis to determine whether or not the corrosion that you witnessed was, in fact, related to a sea strainer leak, or were you just taking Mr. Hand's word for it?
>
> A: I was taking Mr. Hand's word for it.

Id. at 60.

Moreover, McCrea admitted that he could not render an opinion as to whether corrosion in the engine compartment actually caused any problems with the boat, and that he did no tests to determine whether there were any problems:

> Q. [Y]ou . . . wouldn't be able to render an opinion that any of the operational issues Mr. Hand has had are attributable to corrosion?
>
> A. I don't know. I don't know one way or the other.
>
> Q. In order to determine whether or not there was corrosion inside those electrical components and the plugs, you would have to disconnect them and look at them, correct?
>
> A. Yes, you would.

12

> Q.  And you did not do that in this instance.
>
> A.  No, I did not.
>
> Q.  Did you do any analysis of whether or not the corrosion that you noted would, in fact, lead to a future failure of any type?
>
> A.  No.

*Id*. at 62, 65, 137.

McCrea also stated that he believed that the engine made a noise that was not consistent with proper operation, s*ee* Exhibit A14, but did nothing to analyze it, nor does he have any opinion as to its cause. McCrea dep. Ex. A15, p. 85. Ultimately, McCrea admitted that the issues allegedly experienced by Mr. Hand previously did not reoccur during the sea trial, and that the boat operated safely during his inspection. McCrea dep., Ex. A15, pp. 47, 124

McCrea's testimony thus fails to meet the requirements of Fed. R. Evid. 702. Indeed, McCrea's opinions amount to "little more than guesswork" and should be excluded. *Mitchell* 165 F.3d at 781.

### C. Mark Mehta

On September 7, 2007, Mehta, along with others, took the boat at issue in this case out for a sea trial. "Everything went fine in the sea trial," Mr. Mehta testified, until the captain attempted to dock the boat at the end of the sea trial, when the steering locked up. Mehta dep., Ex. A16, pp. 8-9. To the extent Mehta intends to testify as a fact witness with respect to the sea trial, that is permissible. But if Mehta intends to testify as an expert witness, such testimony must be excluded. As with the other proffered experts, Mehta is neither qualified to offer an opinion as to the operation of the Volvo Penta drive system, nor does he offer an opinion that meets the standards of reliability required by Rule 702.

13

As to qualifications, Mehta admitted that he has never done any work on a Volvo Penta drive system, nor does he have any training in the diagnosis of Volvo engine fault codes. Mehta dep., Ex. A16, pp. 35, 66.  Nor did Mehta did test or analyze the Volvo Penta drive system on the boat. *Id*. at 18. Ultimately, Mehta testified that he does not know what caused the steering problem that was experienced during the sea trial, whether repairs were performed, or whether the boat has since successfully completed a sea trial:

> Q. Do you know what caused the problem that you experienced that day?
>
> A. Volvo did not have an answer at that moment.
>
> Q. I'm asking you, do you know?
>
> A. No, I do not know.
>
> Q. Do you know whether there is any corrosion damage that has manifested itself in the boat as we sit here today?
>
> A. No.
>
> Q. Do you know what components, if any, were sprayed or in contact with salt water as a result of the sea strainer leaks?
>
> A. No.
>
> Q. Did you do any testing to determine the extent to which any spray may or may not have occurred on the Hand boat when the strainer's leaked?
>
> A. Testing?  Do you mean if I actually wanted to prove it again and see what happens?
>
> Q. Right.
>
> A. Oh, no.
>
> Q. You did not do it; did you?
>
> A. No.  I did not.

> Q. Do you know if subsequent sea trials in operations of the boat were performed successfully?
>
> A. I am not aware.

*Id*. at 25, 45, 47-48, 56.

Permitting Mehta to offer an opinion as to an alleged defect in the Volvo Penta drive system would be to allow unadulterated speculation far short of the standards of reliability required under Rule 702, and Mehta should be excluded from offering an opinion as to a defect in the Volvo Penta drive system.

### III. CONCLUSION

For the reasons set forth above, Volvo Penta of the Americas, Inc. requests (1) that the Court hold a hearing pursuant to Federal Rule of Evidence 104(a) to determine the admissibility of the proposed testimony of Rossitto, McCrae and Mehta; and, (2) that the Court find and determine that the proposed expert testimony of Rossitto, McCrae and Mehta is not admissible at trial under Federal Rule of Evidence 702, and should also be excluded from evidence under Federal Rules of Evidence 402 and 403. Volvo Penta's counsel requested the concurrence of Plaintiffs' counsel in the relief sought (by email communication on March 1, 2011), and Plaintiff's counsel declined to concur in the relief sought.

VARNUM LLP

Attorneys for Defendant – Volvo Penta of the Americas, Inc.

DATED: March 2, 2011      BY:      */s/ Jeffrey D. Smith*
Jeffrey D. Smith
251 North Rose Street, 4th Floor
Kalamazoo, MI 49007-3823
Telephone: 269/382-2300
jdsmith@varnumlaw.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that on March 2, 2011, I electronically filed the foregoing Volvo Penta of the Americas, Inc.'s Motion and Supporting Memorandum of Law to Exclude Plaintiffs' Expert Testimony on behalf of Defendant Volvo Penta of the Americas, Inc. with the Clerk of the Court for the United States District Court, District of Colorado, using the electronic case filing system of the Court.  The electronic case filing system will send a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means or, to those who have not so consented, by certified mail, return receipt requested:

    Donald C. Sisson, Esq.
    Elkus & Sisson, P.C.
    1660 Lincoln Street
    Suite 1750
    Denver, CO  80264

    Shannon Marie Bell, Esq.
    William Frederick Jones, Esq.
    Moye White, LLP
    1400 16th Street
    16 Market Square, 6th Floor
    Denver, CO  80202-1486

    Steven G. York, Esq.
    Dworkin, Chambers, Williams, York,
    Benson & Evans, P.C.
    3900 East Mexico Avenue
    Suite 1300
    Denver, CO  80210

                                             */s/ Jeffrey D. Smith*
                                             Jeffrey D. Smith